Good morning, Your Honors. Stephen Lubliner on behalf of Appellant Mar-Nique Simon. I'm going to try to reserve two minutes for rebuttal. May it please the Court. I think it's useful in this case to imagine the situation and how we'd think about the record if the roles were reversed. If the State of California had prosecuted Mr. Simon for the crime of being mentally retarded or too mentally impaired to file a timely habeas conviction, and they got a conviction, and it was appealed, and a substantial evidence argument was made, going, hey, wait a minute, these documents, they don't explicitly and expressly blanket all relevant time periods, I think the Attorney General would come back saying, well, there's circumstantial evidence and the jury could use its reason and experience. They see mental retardation. They see first percentile intellectual functioning. They weren't born yesterday. They know this stuff didn't arise overnight. It would extend backward. It would extend forward. And it would prove that Mr. Simon could not do what was asked of him, probably judgment affirmed. Now, best case here is probably not a quote conviction, I recognize that, but a trial or an evidentiary hearing, and to use the metaphor some more, can Mr. Simon be held to answer for the crime of being too mentally impaired to file a timely habeas petition? And I think the showing on that question here is pretty darn good. The test from the Bills case, the Mendoza case for evidentiary hearings on these issues, it's very liberal. It's non-frivolous showing language. It's some circumstances consistent with allegations of impairment. Go back to Laws v. Lamarck, they really just focused on the allegations even more than they focused on the showing, and we have a very strong record here. We have congruence between the allegations here and the substantive allegations in the petition about impairment during the plea proceedings, so it's not like he just made up some nonsense about being incompetent and forgetting to challenge a Miranda issue or something like that. We have a pro se litigant, an impaired 17-year-old pro se litigant, probably, as the case is recognized, dependent on the kindness of strangers in the institution, may or may not be available, kindness may come at some cost. We have a case because there was no appeal, there's no appellate record that the client had a hard road to hoe. Whoever prepared this petition had to do it all himself. There's no State court briefing to cut and paste. And again, this is pro se habeas litigation. It's not State court where the trial court declares a doubt about competency, three experts get appointed to look at the issue from each side. This is not the penalty phase of a capital case or habeas litigation looking at the penalty phase of a capital case. There's no lawyer here writing this stuff out. There's no discovery. There is no expert to give everything its proper name, mental retardation or something else, and to explain day-to-day cause and effect in meticulous and expensive detail. There is the Young Report, which Mr. Simon was fortunate enough to have. There is the drug treatment information from Juvenile Court that he's fortunate enough to have. I don't think there's any rational basis for believing that Mr. Simon could have made a better case than the very good case that he already did. And if I can give you a little personal experience, I don't know what Mr. Simon's mental health records look like, but I know I get calls and letters from clients all the time saying, I know this isn't strictly relevant to my case, but I asked the prison for my medical records, and they blew me off. I asked them for trust account information, and they blew me off. The prescription record really doesn't show very much at all. There are lots of people in this country who are on Paxil. It doesn't mean that they're mentally impaired. The Young Report is the one that's interesting. Judge Henderson said, look, there's just nothing to it. It basically says, gee, it doesn't look good, but there's lots of things that we want, there's lots more questions that we really need to ask before we can do anything. Nobody's ever asked those questions. Well, I think nobody's ever asked those questions, as I say in the briefs, to confirm whether the DSM diagnosis of mental retardation is appropriate, as opposed to putting some other name of one percentile intellectual functioning and the failure to perform basic tasks. The Young Report did not even raise a scintilla of doubt that Mr. Simon was malingering during the examination. That's the kind of follow-up that I think could be done, if necessary, to give a name to Mr. Simon's problems on remand in the district court in light of the non-frivolous showing from Mendoza, from Bills, some circumstances consistent with. I think we know that this kind of substandard, extremely substandard intellectual functioning doesn't arise overnight. I don't think it was ever seriously contended that this could have just happened the day before Dr. Young showed up to interview Mr. Simon. So I don't view the failure to conduct the follow-up investigation. It is my understanding that that had not been done, because it wasn't needed to be done in conjunction with the Young Report. I don't think that diminishes or undermines the testing, the conclusions, and so on that we have in the Young Report. As far as the jailhouse medication records, I understand that people are on Paxil, they're on, I think, tracitones and anti-anxiety medication. And that can stabilize them. I think what that adds to the Young Report is a couple of things. Is one that this is, if not, this is information that doesn't necessarily come from the limitations period. It does come from the time that Mr. Simon was in jail awaiting to resolve his case. It comes from the time of the plea. So it does add color to the fact that he made these substantive allegations. He believes in these substantive allegations. And these are the allegations that are relevant here. In terms of what the juvenile, what the jail report medication does suggest, and I explain this in the briefs, it's at least noteworthy. And they try to decrease his medication from month to month, and it doesn't work. So they up him. I think they take him off one of the medications, and then they put him back on. So it does lend itself to the inference that whatever was being treated, anxiety, depression, and so on, was not being easily managed. Unlike in the one case that the, I believe it's the Roberts case, that the Attorney General relies on, where the evidence was so comprehensive. And it was a mood disorder case. And everything in the record said good, managed, thoughts are oriented, time and place, all the things that look like whatever the diagnosis might be. It was all being, it was all under control. There's certainly no sense, as the Court, I think, correctly recognizes, that Mr. Simon's 1% intellectual functioning was under control. I think that's contrary to logic and experience. I think we have a very strong record. I think we have the strongest possible record. So what are we supposed to take from the fact that the Young report is dated 2006, which is two years before the state habeas corpus was filed? There's no follow-up by counsel then. I understand that was not you. But there's been no follow-up since 2006. And as you said, this didn't arise the day before he did or didn't file or didn't plead guilty. So there's nothing been done since 2006. And it was well known to the attorneys before they ever started the state proceedings. Well, Your Honor, I think one thing about the Young report, if you look at who it's addressed to, it's addressed to an attorney at the Contra Costa County Public Defender's Office. This case came out of Alameda County. And I had a brief email exchange with Ms. Gray, whose name is on the report. And there had been, I'm not sure if there were charges in Contra Costa County that were being followed up on while Mr. Simon was in prison or just an investigation in which he was a material witness. I believe the report was prepared with an eye towards attacking a statement he gave as involuntary. And I guess the litigation was probably abandoned. I'm not sure what happened. I don't think he's serving a separate sentence for Contra Costa County matters. But I think the whole thing was put to sleep. And there was no need to follow up. So it's not like habeas counsel somewhere along the line abandoned the investigation into Mr. Simon's mental state. Ms. Gray would have ceased to be his lawyer. And then he would have just been a 17, 18, 19-year-old kid with no education. Why wasn't there some kind of follow-up done before you got to Judge Henderson, though? By? When you got to federal district court and you know that you're going to have to show that there's something that excuses your delay in filing, why don't you have an obligation to follow up on Dr. Young's report that says there's got to be some follow-up here to verify everything I've just said? Why doesn't Mr. Simon, when he's in jail functioning pro se with jailhouse lawyers or who's going to do the follow-up? I think the most that conceivably could have been done to buttress his showing would have been try to get his records from the prison. And as I've, the point I made from personal experience, inmates sometimes have a hard time getting their own information from the prison. The one person in this drama that would not have had a hard time getting records from the prison is the Attorney General's office. And I also know that from personal experience. And one point that's made in Laws v. Lamarck is that they note that there's no rebuttal documentation submitted in response to the allegations of mental impairment. If the AG could have done that, I think they would have done that. Regardless, they didn't do it here. I don't think we have any basis for saying that Mr. Simon was functioning, was any more functional, normal, intellectually sound after the Young report than he was during it and in the years prior. Unless the Court has any more questions, I'd like some time for a brief rebuttal after. Thank you, Your Honor. Good morning, may it please the Court. Michelle Swanson on behalf of the Warden. I'm just going to restrict my comments to the issue about the evidentiary hearing. As appellant has noted, the test for whether the district court should conduct an evidentiary hearing is if there's a good faith allegation that would, if true, entitle the petitioner to equitable tolling. And also, circumstances in the record that are consistent with that allegation. And I'm going to assume that he made a good faith allegation with respect to the claim of mental retardation, but that there were no circumstances in the record that were consistent with that allegation. The What about the Young report? The Young report, yes, that could be consistent with his allegation that he had mental retardation, but there was other countervailing evidence in the record that undermined that it was his mental retardation was, assuming that it was true, was severe enough to prevent him from timely filing during the statute of limitations. Is that the point of an evidentiary hearing, to sort that out? Well, the point I was going to make is that we actually had, the district court had enough evidence in front of him to make that determination. And one of the circumstances that In what determination that his retardation Well, he did, that, I'm sorry, that there was no need for an evidentiary hearing. Because? Because the allegations weren't sufficient to require one? Well, I'm going to assume the sufficiency of the allegation, but what I'm challenging what we're challenging here is that there were any circumstances consistent with that, and also that there were actually, that there were circumstances that sort of rebutted that. And so one of the things I want to talk about is in Laws v. Lamarck, the court found, as the circumstance Before you get there, just out of curiosity, let me ask you to respond to counsel's remark that the AG can always get these records. Did you try to get any records to follow up on the Young report? I did not, and let me explain why. First of all, with respect to the medications that were apparently, from what we learned in the opening brief, to treat depression and anxiety, there was no allegation that he has received any treatment in prison. I'm talking about the Young report. The Young report. I did not seek prison records because it seemed clear to me, based on the petitioner's state habeas petition, that the reason why his filing was untimely there was because he had recently discovered new evidence in the form of Dr. Young's report, which told me that there were no prison records on mental retardation. And that is why I did not seek any records, because he didn't make any allegation or showing that any existed. And neither have they made any allegations that they exist, either in the opening brief or here at oral argument. What is your understanding of his mental age? The petitioner. I don't know. I mean, all we know is the Young report, and that's inconclusive. Seven years? Is that about right? Well, that is what he tested out according to her. Okay. But she also said when somebody scores that low, it brings up some questions, and that that was why there was – that there was a follow-up investigation as to that. Is there anything in the record that indicates that his intellectual ability ever progressed above being a seven-year-old? Well, that was one of the arguments that was made in the opening brief, that mental retardation is a static condition, and so that we can reach back and assume that if he were, in fact, mentally retarded, that that would reach back to the time of the plea. It would reach back to the time of the limitations period and beyond. Now, our countervailing evidence is that, well, he filed on his own, apparently, state habeas petitions after the Young report came out. But that was also way after the limitations period, right? That is correct. But what it shows is that his mental retardation was not so severe that he could not understand. Oh, it could show that he had jailhouse lawyer help. But that allegation has never been made. And I also would like to point out, he did have a lawyer. But you're just drawing an adverse inference just from the mere fact that a pro se petition was filed. But he also had, I also would like to point out, he did have an attorney in 2006. He could, who investigated this mental retardation. Apparently not because she thought he was incompetent to stand trial, but for another reason. We heard a little different explanation, which was very interesting, which was that this was in Contra Costa, that there was another proceeding going on in Contra Costa, that that proceeding evidently was not followed up on. So there would have been no reason to have followed up on this. Right. According to what I've heard today. I don't know anything about that. Yes. Ms. Gray may not have had any reason to pursue anything in Alameda County, because she was in Contra Costa County. But my point is that he had access to an attorney who was investigating his mental retardation. And at that time, he could have- But if she had no reason to challenge anything in Alameda County, what was she supposed to do? No, I'm talking now about his diligence. And that if he didn't have- What was he supposed to do? Did he have a copy of the Young Report? Well, in 2006, he did receive a copy of that report. And that is one of the reasons why he said he delayed filing the State Habeas Petition, because he did not know about his mental retardation until 2006. And so- Did he, is that the lawyer or the petitioner? Well, the petitioner is Jailhouse Lawyer. I don't know. It's, I mean, I'm assuming he filed this because I have never seen an allegation that he was assisted by a Jailhouse Lawyer. But the allegation in the Verified State Petition as to why he was, his State Habeas Petition was so untimely was that he had just discovered new evidence which consisted of Dr. Young's report. Do we know he had seen it? Well, he attached it to his State Petitions and his Federal Petition. Attached it to his State Petitions when? In 2008? Yes. I believe it, now this will be in the record, we attached the petition, the Superior Court Petition, I believe the Supreme Court Petition, to our motion to dismiss in the record. That's not part of the excerpts of record, but it was part of the district court record. And I believe he did attach it to a Superior Court Petition. And then one of the other points I wanted to make is that laws, one of the things that laws found significant, and that they found was consistent with the Petitioner's allegation in that case, was that there actually was a competency hearing at the time of trial in laws. And five different psychologists or psychiatrists examined him and they actually disagreed as to whether he was competent. And the trial court ultimately decided that he was. But there was no competency hearing here. The trial court under State law is supposed to conduct a competency hearing if there is a doubt as to the Petitioner's competency. Apparently that did not happen. Trial counsel had no doubt as well. And that is a circumstance that is not consistent with this allegation that he was incompetent at the time of the plea and beyond during the limitations period. Well, you know, I think that's evidence that, you know, maybe should be before the trial fact. But but the fact is, it's just effort pointing out the only mental health record, testing record that we have is this young report, which indicates that his mental age function is somewhere between seven and 10 years old. I mean, he can't think beyond what a 10 year old or seven year old can think now that. And I agree. And I and I grant you that the report says, you know, we need follow up to verify this. But that being the only evidence in the record, don't you think that an evidentiary hearing is called for to determine whether in fact, you know, he and plus the fact that retardation like that, you know, doesn't doesn't improve often. Don't you think that that's sufficient to require an evidentiary hearing to determine whether or not mental incapacity might have hindered this timely filing of a petition here? Again, I will just reiterate that under under laws and Roberts, which require circumstances consistent with that, I would say based on the fact that there was no competency hearing at the time of trial and the fact that petitioner was, in fact, able to file these petitions during the time. I will mention that he's seeking equitable tolling. He will need that for a substantial period of time that that no, I it was not incumbent upon the district court to further follow up on that. You mentioned laws, but but couldn't laws stand for the fact that the petitioner does not have the burden of persuasion at the early stage, the mere filing of that he has to show something. And that is the allegation and circumstances consistent. There has to be something more than just a mere allegation. And the point I was trying to make is that we don't have those circumstances here. We might, assuming for purposes of argument, we have the allegation. We don't have the circumstances consistent like we did in laws. And just real quickly, one final point. I just wanted, we're talking about evidentiary hearings here, but I also wanted to make the point that if this case were remanded, this court could have the option of just expanding the record on document review as well. Okay? Okay. Thank you. Counsel, I'll give you one minute. You're over your time, but I will give you one minute. Thank you, Your Honor. In reverse order, as to the point that neither the Court nor counsel ever announced a doubt or declared a doubt, those are the substantive claims here. If we were looking at the substantive claims, I think simply restating that nobody did anything about these issues wouldn't really carry much ice on the merits. I don't think it carries much ice here. I think the Court correctly recognizes that Ms. Gray was not Mr. Simon's attorney for all possible purposes. I hope that never becomes the law, because I get requests from all sorts of clients, all sorts of places, to look into all sorts of issues beyond the scope of my appointment. As to the issue of what Mr. Simon supposedly accomplished, despite his limitations, we don't know what he did. We have an interesting Supreme Court case recently, Ryan v. Gonzalez, a capital habeas case, where the Supreme Court says, We basically don't care if the defendant is mentally competent because the attorney is going to do everything, is going to do everything in the capital habeas case, and it's going to be record-based. Now, we know, since we endorse, tolerate, approve of, accept jailhouse lawyering, you can have a similar kind of relationship. We don't know how these jailhouse lawyering relationships start in the prison yard, hey, I think I got screwed at trial, let me help you out, and then Mr. Simon goes off in a fog and forgets about it, and we just don't know. So to say that he filed a Federal petition, which we wouldn't be here if he hadn't, obviously can't weigh too strongly against the claim, and we just don't know enough about the nature of Mr. Simon's relationship between any jailhouse lawyers to say that the fact that he did, or somebody did what is required to be done is evidence against him. It would be an odd patch 22 to say that you get yourself into court and the only way we find you equitably told on the basis of mental impairment is if you never file anything. That would be a strange outcome. But I think the Court has correctly recognized that the standard for evidentiary hearing from bills, from laws, from Mendoza, is fairly liberal, typical evidentiary hearing standards. And, counsel, you may want to finish up. You've taken more than two minutes over what I allocated. I think the Court recognizes both the law and the facts, and to address the last point, if the Court wants to remand to first expand the record, we'd obviously be agreeable to that as well. Thank you, Your Honor. Thank you. We thank both counsel for the argument. Simon v. Uribe is submitted.
judges: Stafford, Tashima, Bybee